IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MONTA MARKJUES BROWN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00414 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Monta Markjues Brown, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants denied his grievances and failed to investigate his claims, retaliated against him, subjected him to cruel and unusual living conditions, and violated his rights to due process and free exercise of religion. Defendants filed a motion for summary judgment and Brown responded, making this matter ripe for disposition. Upon consideration of the record, I will grant in part and dismiss without prejudice in part defendants' motion for summary judgment.

I.

Brown is a Sunni Muslim inmate housed at Wallens Ridge State Prison ("Wallens Ridge"). As part of his religion, he must eat a halal diet. The Virginia Department of Corrections ("VDOC") provides a Common Fare diet which is designed to accommodate inmates whose religious dietary needs cannot be met by the regular diet. To participate in the Common Fare diet, an inmate must sign an agreement which outlines the requirements for continuing to receive the Common Fare diet. Brown was approved to participate in the Common Fare diet and signed a Common Fare Agreement ("Agreement") on June 18, 2012. The Agreement requires, in relevant part, that Brown not be "observed eating, trading, or possessing unauthorized food items from the main line" and that he must attend at least two services or

other religious activities each month, if they are available. Pursuant to the Agreement, if Brown violates any of the requirements, he can be suspended from the Common Fare diet for six months for his first offense.

Brown states that on January 23, 2015, without any notice, he was taken to an Institutional Classification Authority ("ICA") hearing before Unit Manager ("UM") Reynolds.[1] At the ICA hearing, Sergeant Boyd stated that on January 1, 2015, he observed Brown "come into the cafeteria, bypass giving staff his [identification], and pickup" and "consum[e] a regular [food] tray."[2] In addition, Captain Cope submitted a statement that Brown had recently missed three religious services.[3] At the hearing, Brown stated that he did not accept a regular tray.[4] He also alleges in his complaint that he attended all of the required religious services.[5] UM Reynolds credited Sgt. Boyd's and Cpt. Cope's statements, determined that Brown violated the Agreement by taking a regular tray on January 1, 2015 and failing to attend the required religious services, and suspended Brown from the Common Fare diet for six months. Brown contends

---

[1] Defendants allege that "[a]n ICA Hearing Notification Form was taken to Brown to inform him of his ICA hearing date." However, defendants provide no date on which they allegedly notified Brown and Brown states that he received no notice of the allegations against him or of the hearing. I note that the Internal Incident Report of the alleged violation is blank in the section that shows whether notification was given. In addition, the ICA Hearing form makes no reference to Brown being notified of the allegations or the hearing in advance.

[2] Pursuant to VDOC policy, the Food Operations Director/Manager should ensure that the Common Fare Diet Attendance Log is completed at each meal for offenders receiving Common Fare meals. It appears that UM Reynolds did not consult with the Food Operations Director/Manager at Wallens Ridge or the Common Fare Diet Attendance Log to corroborate Sgt. Boyd's statement.

[3] There is no indication in the record as to whether Cpt. Cope provided the dates on which Brown allegedly missed three services. There is also no indication that Cpt. Cope reported that Brown missed the three services all within the same month.

[4] In support of his complaint, Brown attaches an Offender Request response which indicates that Brown was marked as picking up a Common Fare diet tray on the date and meal in question. It appears that this evidence was not presented at Brown's ICA hearing.

[5] In support of his complaint, Brown attaches an Offender Request response which indicates that Brown missed two services in November 2015 and one service in December 2015. It appears that this evidence was not presented at Brown's ICA hearing.

that UM Reynolds' findings were based on incorrect information and that Brown was not given proper notice of the hearing or an opportunity to present witnesses or evidence. Institutional Program Manager ("IPM") Hensley and Assistant Warden Combs each reviewed and approved UM Reynolds' recommended disposition before it became final. Brown argues that defendants UM Reynolds, IPM Hensley, and Assistant Warden Combs violated his right to due process with regard to the ICA hearing. Brown argues that his right to free exercise of religion was violated when Sgt. Boyd "falsely and wrongly" accused Brown of taking a regular tray and by the policy that VDOC Director Clarke wrote. Brown argues that defendants Grievance Coordinator Ravizee, Warden Fleming, Regional Administrator Ponton, Grievance Coordinator Assistant Hyder, and Major Anderson violated his rights when they denied and/or failed to adequately investigate his complaints or allegations raised in his post-ICA hearing grievances and appeals.

Brown also claims that Lieutenant Coleman intimidated him into "dropping" an informal complaint and that he received a "bogus institutional charge," both in retaliation for filing grievances. In response, defendants contend that on June 8, 2015, Brown received an institutional charge for intimidation in furtherance of gang activities after he entered a shower while another inmate was in the shower and forced the other inmate to get out of the shower. Brown does not dispute defendants' assertion that Brown was given notice and an ICA hearing concerning this charge.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of

3

material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

**III.**

Brown's only allegations against defendants Grievance Coordinator Ravizee, Warden Fleming, Regional Administrator Ponton, Grievance Coordinator Assistant Hyder, and Maj. Anderson are that they denied grievances and/or appeals and/or failed to investigate Brown's complaints or grievances that other defendants violated his rights. I conclude that these defendants are entitled to summary judgment.

4

"Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), and inmates do not have a constitutionally protected right in the grievance procedure, *see, e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the defendants are not liable under § 1983 for their responses to the grievances or appeals. *See Brown v. Va. Dep't Corr.*, No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227, at *8, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation). Further, Brown's claims that the defendants failed to investigate his grievances or complaints are not cognizable under § 1983. *See Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due process violation"); *Sweat v. Rennick*, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); *Lewis v. Williams*, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue."). Accordingly, I conclude that defendants Grievance Coordinator Ravizee, Warden Fleming, Regional Administrator Ponton, Grievance Coordinator Assistant Hyder, and Maj. Anderson are entitled to summary judgment.

## IV.

Brown claims that, in retaliation for filing grievances, defendant Lt. Coleman intimidated him into "dropping" an informal complaint and Brown received a "bogus institutional charge."

5

Brown's allegations are insufficient to state a claim, and, therefore, I will grant defendants' motion for summary judgment as to these claims.

It is well settled that state officials may not retaliate against an inmate for exercising constitutional rights, including the right to access the courts. *See Am. Civ. Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Adams*, 40 F.3d at 75. Retaliation claims are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74). Moreover, to plead a claim of retaliation, a plaintiff must allege specific facts to establish: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Lamp v. Wallace*, No. 3:04CV317, 2005 U.S. Dist. LEXIS 43932, at *9, 2005 WL 5303512, at *4 (E.D. Va. Mar. 23, 2005) (citing *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004)). The test for causation requires an inmate to allege facts that plausibly suggest that, "but for the exercise of the protected right, the alleged retaliatory act would not have occurred." *Id.* (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) and *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)).

Brown claims he was retaliated against for filing grievances. However, an inmate has no constitutional right to participate in grievance proceedings. *Adams*, 40 F.3d at 75. Moreover, Brown has failed to establish the requisite causal connection between a protected activity and the

6

Case 7:15-cv-00414-NKM-RSB   Document 34   Filed 08/31/16   Page 6 of 8   Pageid#: 193

alleged retaliatory actions. Accordingly, I will grant the defendants' motion for summary judgment as to these claims.

## V.

Brown summarily alleges that his Eighth Amendment rights were violated, but he does not allege facts in support of this claim. Therefore, I will grant defendant's motion for summary judgment as to Brown's Eighth Amendment claim.

The Eighth Amendment prohibits cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825 (1994). In doing so, the Eighth Amendment imposes certain duties on prison officials to provide humane conditions of confinement, ensure that inmates receive life's necessities, and take reasonable measures to guarantee the safety of inmates. *Id.* at 825. To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove two elements: (1) that, objectively, the deprivation of a basic human need was "sufficiently serious," and (2) that, subjectively, the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To act with a "sufficiently culpable state of mind," a prison official must not only know of the facts leading to the deprivation, but also know that deprivation would expose an inmate to a certain danger. *See Oliver v. Powell*, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002); *see also, DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 325 (E.D. Va. 2000). Because Brown fails to allege any facts in support of an Eighth Amendment claim, I will grant defendants' motion for summary judgment as to this claim.

## VI.

Brown alleges that the defendants violated his rights to free exercise of religion and due process by removing him from the Common Fare diet for six months. Upon review of the

7

record, I conclude that these claims are best suited for mediation and, therefore, will dismiss defendants' motion for summary judgment without prejudice as to these claims.

## VII.

For the reasons stated, I will grant in part and dismiss without prejudice in part defendant's motion for summary judgment.

**ENTER**: This 31st day of August, 2016.

_/s/ Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE